IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-01546-CYC

ARTURO GINEZ,

Plaintiff,

v.

COLORADO DEPARTMENT OF PUBLIC SAFETY,
COLORADO STATE PATROL,
CSP OFFICER DYLAN DURESKY, in his individual capacity,
CSP OFFICER J. CURTIS, in his individual capacity,
UNKNOWN CSP SUPERVISORY OFFICERS 1–5,

Defendants.

---

**ORDER GRANTING MOTION TO DISMISS**

---

Sometimes, police officers do not speak the language of the people whom they contact. When that barrier arises, they often employ any available method to facilitate communication, from ad hoc interpreters to translation applications. Plaintiff Arturo Ginez posits that more qualified interpreters would do a better job. That is, of course, true. But his suit against defendants Colorado Department of Public Safety ("CDPS"), Colorado State Patrol ("CSP"), CSP Officer Dylan Duresky, and CSP Officer J. Curtis seeks to cast officers' use of ad hoc solutions as constitutionally deficient and discriminatory. The defendants therefore move to dismiss the plaintiff's amended complaint. ECF No. 22. Because the complaint does not plead a violation of the constitutional provisions or statutes invoked, the motion is **GRANTED**.

## BACKGROUND

The amended complaint, ECF No. 21, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), recounts two incidents where the

plaintiff was contacted by CSP officers on suspicion of driving under the influence. First, on April 12, 2024, Duresky contacted the plaintiff at the scene of an automobile accident. ECF No. 21 ¶ 10. Duresky interviewed the plaintiff, a Spanish speaker, using an on-scene paramedic as a translator, foregoing the use of a more credentialed interpreter available remotely. *Id.* ¶ 12. The plaintiff did not fully understand Duresky's questioning and, in the course of the interaction, performed field sobriety tests and provided breath and blood samples with imperfect interpretation. *Id.* ¶¶ 16, 18. Second, some two months later, Curtis contacted the plaintiff at his home around 2:30 a.m. *Id.* ¶ 21. Again, despite the availability of qualified remote interpreters, Curtis initially attempted to use the plaintiff's minor child as a translator before switching to a smartphone translation application to question the plaintiff for about twenty minutes. *See id.* ¶¶ 23, 25, 26, 28. With such faulty translation methods utilized, the plaintiff says, any waiver of his constitutional rights was neither knowing nor intelligent. *See id.* ¶¶ 16, 19, 31–32.

Ultimately, CSP's investigation led to various charges, and the plaintiff pled guilty to two charges of Careless Driving, Colo. Rev. Stat. § 42-4-102(1), (2)(a), according to the state docket, of which the Court may take judicial notice. *See* ECF Nos. 22-1, 22-2; *Est. of McMorris v. C.I.R.*, 243 F.3d 1254, 1259 n.8 (10th Cir. 2001).

The plaintiff then filed this action. ECF No. 1. He amended his complaint, ECF No. 21, in response to a motion to dismiss, ECF No. 17. The amended complaint asserts three claims: (1) "coerced and involuntary statements" in violation of the Fifth and Fourteenth Amendments under 42 U.S.C. § 1983 against Duresky and Curtis; (2) violation of "Fourteenth Amendment Due Process" under 42 U.S.C. § 1983 against "Defendants"; and (3) national origin discrimination in violation of 42 U.S.C. § 2000d ("Title VI") against "Defendants." ECF No. 22 ¶¶ 37–53.

This motion followed.

## ANALYSIS

CDPS and CPS move to dismiss the section 1983 claim against them under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. Because the Eleventh Amendment bars that claim, the Court grants that portion of the motion.

The defendants move to dismiss all remaining claims under Fed. R. Civ. P. 12(b)(6), which permits dismissal for "failure to state a claim upon which relief can be granted." *See* ECF No. 22. To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. But "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a court looks to whether "the plaintiff" has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The amended complaint does not have such content here, so the motion to dismiss is granted in full.

### I. The 42 U.S.C. § 1983 Claims

#### A. Sovereign Immunity

CDPS and CPS argue that the Eleventh Amendment bars Count II against them. That amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. States therefore have a measure of immunity under this amendment and, while often presented as a jurisdictional issue, "Eleventh Amendment immunity doctrine is not easy to characterize." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008). "It is best

understood according to its own unique identity, rather than through its similarities with other legal doctrines," *id.*, though on occasion, it is analyzed under Rule 12(b)(1) as a jurisdictional issue. *See, e.g.*, *Gaines v. Pearson*, 516 F. App'x 724, 726 (10th Cir. 2013). Because it is so treated, and because courts must determine subject matter jurisdiction before addressing the merits, *see Kennedy v. Helix TCS, Inc.*, 284 F. Supp.3d 1186, 1188 (D. Colo. 2018), the analysis begins with addressing this argument.

"With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court" under sovereign immunity principles. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). While the amendment literally covers suits by citizens of other or foreign states, "[i]n practice, the Eleventh Amendment operates as a jurisdictional bar that precludes unconsented suits in federal court against a state," regardless of the relief sought. *Good v. Dep't of Ed.*, 436 F.4th 772, 789 (10th Cir. 2024). In addition, "Eleventh Amendment immunity extends beyond states themselves to encompass governmental entities that are arms of the state." *Id.* CDPS is a state agency, and CSP is a division within that agency. Colo. Rev. Stat. § 24-33.5-103(1), (2)(a). Both of these entities are arms of the state, and are therefore entitled to Eleventh Amendment immunity. *See Benton v. Town of South Fork*, 587 F. App'x 447, 450 (10th Cir. 2014) (CSP); *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) (CDPS).

No exception to sovereign immunity exists in this case. Congress has not abrogated states' immunity to § 1983 suits. *Ruiz*, 299 F.3d at 1181 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). And the plaintiff does not allege that Colorado waived its immunity in this case, nor is there any indication in the record that it did so. *See id.* Indeed, the plaintiff does not respond to the immunity arguments at all, "essentially abandon[ing]" his section 1983 claim against these defendants. *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1205 (D. Colo. 2015).

To the extent the plaintiff maintains Count II against CDPS and CPS, then, it will be dismissed for lack of subject matter jurisdiction.

**B. Failure to State a Claim**

The plaintiff's section 1983 claims against the individual defendants fail to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6).

**1. The "Coerced and Involuntary Statements" Claim**

There are two constitutional sources of protection against involuntary statements in the context of criminal prosecutions. First, the Due Process Clause of the Fourteenth Amendment prohibits coerced statements, that is, statements induced by overbearing the will of the individual such that "his capacity for self-determination [is] critically impaired." *United States v. Young*, 964 F.3d 938, 943 (10th Cir. 2020) (quotation marks omitted). "The Due Process Clause is not implicated without the 'crucial element of police overreaching.'" *United States v. Cash*, 733 F.3d 1264, 1281 (10th Cir. 2013) (quoting *Colorado v. Connelly*, 479 U.S. 157, 163 (1986)). Accordingly, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Connelly*, 479 U.S. at 167.

Second, the Fifth Amendment, as applied against the states by the Fourteenth Amendment, *see Malloy v. Hogan*, 378 U.S. 1, 84 (1964), secures an individual's right to be free from compelled self-incrimination in a criminal case. *See* U.S. Const. amend. V. Like the Due Process Clause, the Fifth Amendment prohibits the use of involuntarily-obtained statements. *See Cash*, 733 F.3d at 1280–81. In order to safeguard this right, in the context of custodial interrogations, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Unless an individual is properly advised of his rights, as embodied by the *Miranda* warnings, and

makes a voluntary, knowing, and intelligent waiver of those rights, his statements during custodial interrogation may not be used against him at trial. *Id.* at 444.

Although he does not expressly say so, the plaintiff appears to invoke both protections in Count I. He fails, however, to allege any non-conclusory facts demonstrating coercion. *Iqbal*, 556 U.S. at 678. He does not and cannot explain how the officers' use of a paramedic, minor child, and translation application rendered his statements involuntary, "i.e., the product of coercion, either physical or psychological." *Young*, 964 F.3d at 942 (quotation marks omitted). No facts in the complaint establish that "law enforcement overbore the [plaintiff's] free will and critically impaired [his] capacity for self-determination" to obtain his statements or consent to testing. *United States v. Pena*, 115 F.4th 1254, 1261 (10th Cir. 2024). "That lack of coercion is the end of the road" for the plaintiff's claim that his statements or participation in the tests "were not voluntary." *United States v. Paycer*, 154 F.4th 1261, 1278 (10th Cir. 2025).

The plaintiff also asserts that he "did not knowingly, intelligently, or voluntarily waive constitutional protections" due to "inaccurate translations, coercive circumstances, and [his] inability to understand the proceedings." ECF No. 21 ¶ 39. To the extent this is a distinct claim that he did not validly waive his *Miranda* rights, it fails for two reasons. First, once again, the plaintiff's allegations do not "contain sufficient factual matter" to "draw the reasonable inference" that the officers obtained his statements and other evidence in violation of *Miranda*. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The allegation that his waiver was not knowing, intelligent, or voluntary is a legal conclusion not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and his conclusory statements invoking "inaccurate translations," "coercive circumstances," and his "inability to understand the proceedings," ECF No. 21 ¶ 39, "do not

suffice." *Iqbal*, 556 U.S. at 678. Second, even if the plaintiff has adequately pleaded that his statements were obtained in violation of *Miranda*, Supreme Court precedent squarely forecloses § 1983 claims predicated on this violation. *Vega v. Tekoh*, 597 U.S. 134, 141 (2022) (holding that a violation of *Miranda* rules does not provide a basis for a claim under § 1983); *see also Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) (same).

For these reasons, Count I will be dismissed against the individual defendants.

**2. The Due Process Claim**

For Count II, the plaintiff alleges that the officers' "use of unqualified interpreters, a minor child, and unreliable translation methods" despite "obvious language barriers" deprived him "of meaningful communication during critical law-enforcement interactions." ECF No. 21 ¶¶ 44–45. He frames this as a procedural due process claim arising under the Fourteenth Amendment. *Id.* ¶ 46.

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cnty. Com'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (quotation marks and citation omitted). The plaintiff's claim fails at the first step. As defendants argue, *see* ECF No. 22 at 12–13, "the Due Process Clause does not create a right to have an interpreter present at the point of arrest." *Humood v. City of Aurora*, No. 12-cv-02185-RM-CBS, 2014 WL 4345410, at *16 (D. Colo. Aug. 28, 2014) (citations omitted). Nor does due process demand that individuals be provided a certified and independent interpreter for police interrogations. *See United States v. Silva-Arzeta*, 602 F.3d 1208, 1216 (10th Cir. 2010).

Again, the plaintiff offers no counterargument, electing not to respond to the defendants' brief on this point. When a party declines to respond to an argument, a court will "not do his work for him and dissect the [opposing party's] plausible argument," supplying an additional reason to dismiss this claim. *See, e.g.*, *Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015).

For these reasons, Count II will be dismissed against the individual defendants.

## II. The Title VI Claim

As an initial matter, the plaintiff agrees that Title VI does not permit claims against individual defendants. *See* ECF No. 23 at 9. Accordingly, this claim will be dismissed as to the officers. *See Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016).

The plaintiff also fails to state a Title VI claim against CDPS or CPS. To state a claim under this section, "a plaintiff must allege facts establishing that (1) the defendant discriminated against the plaintiff on the basis of race, color, or national origin, and (2) the entity engaging in discrimination is receiving federal financial assistance." *McDaniel v. Dominium Mgmt. Servs., LLC*, No. 21-cv-01997-RMR-NYW, 2022 WL 1316384, at *3 (D. Colo. May 3, 2022) (citing *Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993)).

The parties do not dispute that CDPS and CPS receive federal funds. *See* ECF No. 21 ¶¶ 5, 6, 48; ECF No. 24 at 10–22. Thus, the only remaining question "is whether the Amended Complaint plausibly alleges that [these entities] intentionally discriminated against Plaintiff." *Wright v. Univ. of Utah*, No. 2:25-cv-00827-DBB-DAO, 2026 WL 1283623, at *3 (D. Utah May 11, 2026). It does not. The plaintiff contends that the officers did so by using ad hoc interpretation methods instead of qualified interpreter services. ECF No. 23 at 7. But even assuming that this conduct could establish intentional national-origin discrimination by the officers, the amended complaint lacks specific allegations against CDPS or CPS. "Title VI does

not provide for liability 'on the basis of *respondeat superior* alone.'" *Nwosu v. Bolduc*, No. 24-cv-02578-NYW-TPO, 2025 WL 2083835, at *3 (D. Colo. July 24, 2025) (quoting *Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1335 (D. Utah 2008)). "To hold an entity liable for its employee's conduct, a plaintiff must allege that an 'appropriate person' at the entity—that is, someone in a position to implement anti-discrimination measures—had actual notice of the conduct and failed to adequately respond." *Id.* (quoting *Assenov*, 553 F. Supp. 2d at 1335); *McDaniel*, 2022 WL 13116384, at *11. The plaintiff makes no such allegations, and accordingly fails to connect the institutional defendants to his discrimination claim.

Moreover, once again, the plaintiff makes no argument to the contrary, tacitly conceding the point. *See Storey v. Seipel*, No. 2:22-cv-00486-RJS-DAO, 2024 WL 4436609, at *3 (D. Utah Oct. 24, 2024); *Fisher v. City of Fountain*, 2024 WL 1330077, at *3 (D. Colo. Mar. 28, 2024).

The Title VI claim will therefore be dismissed against all defendants.

**III. Request for Leave to Amend**

As an alternative to dismissal, the plaintiff's motion response requests leave to amend his pleading. ECF No. 23 at 8. But "[a] motion shall not be included in a response . . . to the original motion." D.C.COLO.LCivR 7.1(d). Instead, "[a] motion shall be filed as a separate document." *Id.* The plaintiff's request will therefore be denied at the present time.

Nonetheless, dismissal will be without prejudice. "[D]enial of leave to amend and dismissal with prejudice are two separate concepts." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Id.* Although the defendants do not specifically advocate for dismissal with prejudice, they cursorily claim that amendment would be futile. ECF No. 24 at 11. At bottom, the parties disagree whether amendment would be futile, but neither has offered any argument in support of their position.

Because the Court cannot currently conclude that the plaintiff could not amend his complaint to plead facts that would support a viable claim, dismissal with prejudice is inappropriate.

**ORDER**

The defendants' Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 22, is **GRANTED**. The complaint is **DISMISSED** without prejudice. No later than **November 13, 2026**, the plaintiff may seek leave to amend through a formal motion to amend after a meet-and-confer with the defendants. The plaintiff's request for leave to amend, ECF No. 23 at 8, is **DENIED without prejudice** at this time.

Entered and dated this 21st day of October, 2026, at Denver, Colorado.

BY THE COURT:



Cyrus Y. Chung
United States Magistrate Judge